IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC REINERT, et al,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| **vs.** | : | **NO. 12-1094** |
| | : | |
| **NATIONWIDE INSURANCE CO.,** | : | |
| **Defendant** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                               **April 1, 2013**

This is a diversity insurance contract action brought by Mr. & Mrs. Eric Reinert, citizens of Pennsylvania, against Nationwide Insurance Company for insurance proceeds stemming from an automobile accident which occurred in North Carolina.[1] The parties have filed cross-motions for partial summary judgment, limited to the issue of whether Pennsylvania or North Carolina substantive tort law applies for purposes of determining damages. For the reasons that follow, I will grant the defendant's motion and deny the plaintiff's motion.

**I. BACKGROUND**

In the afternoon of August 21, 2010, the Reinerts were travelling in their 1999 Toyota Sienna in North Carolina. Eric Reinert was driving and Brenda, his wife, was a passenger. A car operated by Andrea Slusher, a citizen of North Carolina, slammed into the Reinerts' car from the rear, which caused the Reinerts' car to strike the car in front of

---

[1] The Reinerts filed a two-count complaint. Count I is a claim for breach of an insurance contract against Nationwide and a possible breach of a fiduciary duty owed him. In Count II, Mrs. Reinert brings a claim of loss of consortium.

it.  The impact caused Mr. Reinert to lose control of the car, leave the roadway, strike a guardrail, and come to rest facing the opposite direction of the highway.  Mr. Reinert suffered serious injuries which include injuries to his leg, neck, back, jaw, ankle, thigh, Achilles tendon, and anxiety and depression.  He required medical and surgical treatment and is likely to require ongoing treatment in the future.

The complaint alleges that Miss Slusher's negligence was the sole cause of the accident.  Miss Slusher is insured by Allstate and the policy provided liability insurance coverage with a $100,000 limit per person.  The plaintiff's liability claims against Miss Slusher were settled, with Nationwide's consent, by a tender of the full available liability limits.

At the time of the accident, the Reinerts had a multi-vehicle insurance policy in full force and effect with Nationwide.  That policy included underinsured[2] motorist's coverage in the amount of $250,000 per person on a full tort and non-stacked basis.  Mr. Reinert brought this action for underinsured motorist coverage pursuant to the terms of his insurance contract with Nationwide for any sums awarded him as damages that are in excess of the insurance coverage paid to Mr. Reinert under Miss Slusher's Allstate policy.

---

[2] The underinsured motorist provision of Mr. Reinert's policy provides that Nationwide will pay compensatory damages, including derivative claims, which are due to the insured by law from the owner or driver of an underinsured motor vehicle because of bodily injury suffered by the insured or a relative.  An underinsured motor vehicle is a motor vehicle for which bodily injury liability coverage, bonds or insurance are in effect, but the total amount is insufficient to pay the damages an insured is entitled to recover.  See Document #10-1 at UI1.

Mr. Reinert has incurred medical expenses and wage loss, which have been covered by payment of first party benefits under the Nationwide policy, which exceed the gross amount billed of $163,229 for medical benefits and the gross amount of $92,000.00 for wage loss.  N.T. 11/02/12 at 14.  Specifically, medical benefits in the amount of $65,316 have been paid, and wage loss benefits in the amount of $74,150.40, representing 80% of lost wages, have been paid.  Id.

## II.  STANDARD OF REVIEW

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(a).  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials. FED.R.CIV.P. 56(c)(1)(A). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. at 322. Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252. If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

The central issue in the parties' motions for partial summary judgment is whether Pennsylvania or North Carolina substantive tort law applies for purposes of determining damages. It is well established that a district court in a diversity action will apply the choice of law rules of the forum state in determining which state's law will be applied to the substantive issues before it. Klaxon v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496 (1941); Huber v. Taylor, 469 F.3d 67, 73 (3d Cir. 2006).

Prior to Griffith v. United Airlines, Inc., 203 A.2d 796 (Pa. 1964), Pennsylvania choice-of-law rules were the laws of *lex loci contractus* (place of contract) and *lex loci delicti* (place of injury).  Hammersmith v. TIG Ins. Co., 480 F.3d 220, 227 (3d Cir. 2007).  In Griffith, the Pennsylvania Supreme Court abandoned the strict *lex loci delicti* rule, and adopted a "more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court."  Griffith, 203 A.2d at 805-806.  The Court of Appeals for the Third Circuit noted that the flexible Griffith rule combines the "approaches of both [the] Restatement II (contacts establishing significant relationships) and 'interests analysis' (qualitative appraisal of the relevant states' policies with respect to the controversy).'"  Hammersmith, 480 F.3d at 231 (quoting Melville v. Am. Home Assurance Co., 584 F.2d 1306, 1311 (3d Cir. 1978)); see also Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 463 (3d Cir. 2006).

Although Griffith, which dealt with a tort action, abandoned the *lex loci delicti* rule, the Pennsylvania Supreme Court has not yet applied the Griffith standard to a contract action.  Hammersmith, 480 F.3d at 228 (citing Budtel Assocs., LP v. Cont'l Cas. Co., 915 A.2d 640 (Pa. Super. 2005)).  It is thus not apparent whether the *lex loci contractus* rule is still considered Pennsylvania law.  Id. at 227.  The majority of authorities at both the state and federal level, however, have applied the Griffith standard to contract actions.  Id. at 227-228 (citing Gen. Star Natl. Ins. Co. v. Liberty Mut. Ins. Co., 960 F.2d 377 (3d Cir. 1992); Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co., 880 F.2d 685 (3d Cir. 1989); Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71 (3d Cir. 1985); Wilson v. Transport Ins. Co.,

5

889 A.2d 563 (Pa. Super. 2005)); McCabe v. Prudential Prop. & Cas. Ins. Co., 514 A.2d 582 (Pa. Super. 1986); but see Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 434 (3d Cir. 2006) (citing Crawford v. Manhattan Life Ins. Co., 221 A.2d 877, 880 (1966) (an insurance contract is governed by the law of the state in which the contract was made)). The Third Circuit stated: "[I]t is now clear that Pennsylvania applies the more flexible 'interest/contacts' methodology to contract choice-of-law questions." Hammersmith, 480 F.3d at 226-227.

Under Pennsylvania choice of law rules, a court must first determine whether there is an actual conflict between the competing states. Hammersmith, 480 F.3d at 231. To determine whether an "actual conflict" exists, the court must examine the substance of the potentially applicable laws to identify "whether these states would actually treat this issue any differently." Id. at 230. If the application of the proposed laws would not lead to different results, the court need only apply the forum law. Id. However, where the competing laws produce different results, the court must characterize the type of conflict. Id. To determine the type of conflict, the court must perform an "interest analysis" of the policies of the interested states and then characterize the relationship between the policies and the factual predicate of the action as a true conflict, a false conflict, or an "unprovided for situation." Id.

A true conflict exists "only if both jurisdictions' interests would be impaired by the application of the other's laws." Id. at 230. In the event of a true conflict, the court must apply the law of the state with the greatest interest, based upon an analysis of which state has the most significant contacts with the particular issue. Id. at 231; see also

889 A.2d 563 (Pa. Super. 2005)); McCabe v. Prudential Prop. & Cas. Ins. Co., 514 A.2d 582 (Pa. Super. 1986); but see Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 434 (3d Cir. 2006) (citing Crawford v. Manhattan Life Ins. Co., 221 A.2d 877, 880 (1966) (an insurance contract is governed by the law of the state in which the contract was made)). The Third Circuit stated: "[I]t is now clear that Pennsylvania applies the more flexible 'interest/contacts' methodology to contract choice-of-law questions." Hammersmith, 480 F.3d at 226-227.

Under Pennsylvania choice of law rules, a court must first determine whether there is an actual conflict between the competing states. Hammersmith, 480 F.3d at 231. To determine whether an "actual conflict" exists, the court must examine the substance of the potentially applicable laws to identify "whether these states would actually treat this issue any differently." Id. at 230. If the application of the proposed laws would not lead to different results, the court need only apply the forum law. Id. However, where the competing laws produce different results, the court must characterize the type of conflict. Id. To determine the type of conflict, the court must perform an "interest analysis" of the policies of the interested states and then characterize the relationship between the policies and the factual predicate of the action as a true conflict, a false conflict, or an "unprovided for situation." Id.

A true conflict exists "only if both jurisdictions' interests would be impaired by the application of the other's laws." Id. at 230. In the event of a true conflict, the court must apply the law of the state with the greatest interest, based upon an analysis of which state has the most significant contacts with the particular issue. Id. at 231; see also

Garcia v. Plaza Oldsmobile LTD., 421 F.3d 216, 220 (3d Cir. 2005).  A false conflict exists "if only one jurisdiction's governmental interest would be impaired by the application of the other jurisdiction's laws."  Hammersmith, 480 F.3d at 229.  In the event of a false conflict, the court applies the law of the only interested state.  Id.  Finally, an "unprovided for" situation arises when no jurisdiction's interest would be impaired if its laws were not applied.  Id. at n.9.  An "unprovided for situation" triggers the law of the place where the wrong was committed.  Id.

    Initially, I find, and the parties agree, that a conflict exists between the substantive tort laws of Pennsylvania and North Carolina, and that both states would treat the issue of determining damages differently under the circumstances presented here.  Pursuant to North Carolina substantive tort law, the amounts of lost wages and medical bills rendered for treatment to Mr. Reinert would be taken into account, and constitute admissible evidence, irrespective of whether the law of the claimant's state of residence, i.e., Pennsylvania, permits subrogation and/or the assertion of such a claim, and irrespective of the amounts and sources of payment.  See North Carolina's Motor Vehicle Safety and Financial Responsibility Act of 1953 ("MVSFRA"), N.C. Gen. Stat. § 20-279.  Thus, the plaintiffs contend, by virtue of North Carolina substantive tort law and Pennsylvania substantive contract law, they are entitled to offer into evidence and have the jury consider the full face amount of all medical bills submitted to the plaintiff and the full face amount of all lost wages, irrespective of whether Mr. Reinert has received first party benefits to compensate him in whole or in part.

In contrast, pursuant to Pennsylvania substantive tort law, Mr. Reinert would be permitted to assert claims for, introduce evidence with respect to, and potentially recover damages in the within action for past, present, and future medical bills and wage loss only to the extent that Mr. Reinert was not otherwise compensated by his first party benefits under the Nationwide policy, irrespective of any North Carolina substantive tort law that may be to the contrary. See Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. C.S.A. § 1701, *et seq*.

Because it is clear that there is an actual conflict between the laws of these two states, I must determine whether the conflict is "true, false, or unprovided for" by performing an "interest analysis" of the policies of Pennsylvania and North Carolina. Hammersmith, 480 F.3d at 230.

Certainly both states have an interest in the application of their laws to ensure consistent protection of their residents under contracts issued within their borders. Here, the Reinerts are citizens of Pennsylvania with an insurance policy issued in Pennsylvania. The primary purpose of enacting Pennsylvania's MVFRL, and especially its 1990 amendments, and thus the object to be achieved, was to control costs of insurance such that a higher percentage of drivers may be able to afford insurance. Craley v. State Farm & Cas. Co., 895 A.2d 530 (Pa. 2006); see also Rudloff v. Nationwide Mut. Ins. Co., 806 A.2d 1270 (Pa.Super. 2002) (the intent behind the MVFRL is to stop the spiraling costs of automobile insurance in the Commonwealth).

On the other hand, North Carolina courts have said that the purpose of the enactment of that state's MVSFRA was to provide protection to the public, that is, to

8

persons injured or damaged by the negligent operation of automobiles. Indiana Lumbermens Mut. Ins. Co. v. Parton, 147 F. Supp. 887 (M.D.N.C. 1957). Hawley v. Indemnity Ins. Co. of N. Am., 126 S.E.2d 161 (N.C. 1962); Allstate Ins. Co. v. Shelby Mut. Ins. Co., 152 S.E.2d 436 (N.C. 1967); Nationwide Mut. Ins. Co. v. Hayes, 174 S.E.2d 511 (N.C. 1970); Fidelity & Cas. Co. v. North Carolina Farm Bureau Mut. Ins. Co., 192 S.E.2d 113 (N.C. 1972). Medical payments coverage is not statutorily mandated, nor is it discussed in North Carolina's MVSFRA. Accordingly, unlike Pennsylvania's MVFRL, North Carolina's Act has no relevance to assessing the rights of a claimant to damages against a third party tortfeasor. Espino v. Allstate Indemnity Company, 583 S.E.2d 376 (N.C. 2003). In the absence of an applicable provision in the Act, an insurer's liability is measured in terms of the policy as written. Younts v. State Farm Mut. Auto. Ins. Co., 189 S.E.2d 137 (N.C. 1972).

Further, under North Carolina law, the collateral source rule applies, such that evidence of medical bills is admissible in a third party action, irrespective of the source of the payment. Espino, 583 S.E.2d at 378. The collateral rule seeks to prevent a tortfeasor from "reducing his own liability for damages by the amount of compensation the injured party receives from an independent source." Id.

If Pennsylvania law were applied in this action, Mr. Reinert would be permitted to introduce evidence with respect to damages for past, present, and future medical bills and wage loss only to the extent that he was not otherwise compensated by his first party benefits under the Nationwide policy. Accordingly, Pennsylvania's interest in controlling costs of insurance would be well served. It would have no real bearing, however, on

North Carolina's interests because North Carolina's Act has no relevance to assessing the rights of a claimant to damages against a third party tortfeasor.  If North Carolina law were applied here, Mr. Reinert would be able to introduce all admissible evidence with respect to those damages whether or not he had already been compensated by his first party benefits under the Nationwide policy.  In that case, Pennsylvania's interest in controlling costs would be greatly impaired, yet there would be no bearing on North Carolina's interest.  Accordingly, because only one jurisdiction's interest would be impaired, the conflict between the laws of Pennsylvania and North Carolina would be considered a false conflict, which would trigger the application of the law of the only interested state, i.e., Pennsylvania.  Hammersmith, 480 F.3d at 229.

   In the alternative, even if a true conflict existed where both jurisdictions' interests would be impaired by the application of the other's laws, the same outcome would result.  A review of the significant contacts with this action demonstrates that Pennsylvania's contacts are most significant.  Id. at 231.  The plaintiff is a resident of the Commonwealth of Pennsylvania.  The insured automobile was registered in Pennsylvania.  The insurance policy under which this claim arose was purchased in Pennsylvania and issued by Nationwide pursuant to Pennsylvania's MVFRL.  The plaintiff received first party benefits required by Pennsylvania law under this policy of insurance.  As a result of the injuries sustained in this accident, the plaintiff received medical treatment in Pennsylvania provided by Pennsylvania medical providers.  I note that these medical providers, when providing services to treat injuries sustained in a motor vehicle accident, are also bound by Pennsylvania's MVFRL, which restricts the amount that medical

providers can require, request, or accept in payment.  See §1797 of the MVFRL.  On the other hand, the only contacts with North Carolina were the location of the accident and the underinsured driver.

The most significant contacts presented in this action reveal that Pennsylvania substantive tort law must be applied.  This insurance contract was formed in Pennsylvania under the Pennsylvania Motor Vehicle Financial Responsibility Law, a law that clearly emphasized cost containment.  Section 1722 of that law specifically provides that, in any action for damages against a tortfeasor or underinsured motorist action, any plaintiff who is eligible to receive other benefits, including first party benefits, is precluded from recovering the amount of benefits previously paid.  North Carolina has no interest in the construction or application of an insurance policy issued under Pennsylvania's MVFRL.

Accordingly, I will grant the defendant's motion for partial summary judgment, deny the plaintiffs' motion, and order that evidence of medical bills and paid wage loss incurred by the plaintiff are not admissible at the trial of this action.

An appropriate Order follows.